UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:15-cr-219-Orl-41TBS

GEORGE ADRIEN BROOKS

**RESPONSE IN OPPOSITION TO MOTION FOR ACQUITTAL**

The United States of America, by and through the undersigned Assistant United States Attorney, files its response in opposition to the defendant's motion for judgment of acquittal (Docs. 69, 87). In support of the motion, the United States submits the following memorandum.

### I.     Background

On October 1, 2015, a federal Grand Jury sitting in Orlando, Florida, issued an Indictment charging George Adrien BROOKS (BROOKS) with a violation of Title 18, United States Code, Section 2422(b), namely, the attempt to persuade, induce, or entice a person the defendant believed to be a minor through an adult intermediary, to engage in sexual activity for which the defendant could have been charged with sexual battery under Florida Statute Section 794.011.

BROOKS was tried on March 3 and 5, 2016. The United States called four witnesses, and presented evidence that from on or about September 5, 2015 to on or about September 10, 2015, BROOKS engaged in communications, via

the Internet and a cell phone, with Federal Bureau of Investigations (FBI) Special Agent Rodney Hyre, who was posing as the father of two minors (a 10-year-old boy and a 13-year-old girl) involved in an incestuous relationship.   During the online communications, the defendant told SA Hyre that he wanted to perform sexual acts on his minor boy such as oral and (possibly) anal sex.

The evidence showed that on September 10, 2015, BROOKS traveled from his residence to Gander Mountain, in Seminole County, Florida, where he intended to meet the 10-year-old boy for the purpose of inducing him into sex acts the defendant had previously discussed with SA Hyre via e-mail and a recorded telephone conversation.

SA Hyre testified that, post-*Miranda*, BROOKS admitted he fantasized about sex with children, which caused him to travel to the location in Gander Mountain with the intent to induce the minor to perform oral sex, and that he had been in communication with the father of the boy over the course of several days for the purpose of soliciting oral sex from the minor, conduct for which he could be charged with sexual battery in the state of Florida.   BROOKS also admitted that about four years ago he had engaged in similar conversations over the Internet with the father of a 12-year-old boy, with the purpose of engaging the minor boy in sexual activity.

## II.   Statement of the Evidence

SA Hyre testified that on September 5, 2015, while he was working in an undercover capacity he detected an advertisement in the casual encounters

section of Craigslist with the caption, "Family Play Time-m4m (Orlando)."  The body of the advertisement stated, "I know there are families out there (fathers/sons/uncles/nephews/cousins) that play together. I would like to be part of your family and enjoy the closeness you enjoy as a family…"  *See* Government Trial Exhibit 1 (Craigslist advertisement).  SA Hyre ((hereinafter referred to as "UC"), responded via e-mail and indicated that he was the father of a 10-year-old boy and a 13-year-old girl.  *See* Government Trial Exhibit 3 (e-mail communications between the UC and BROOKS).  The UC expressed that he and his children were very close and enjoyed meeting new friends.  The UC further stated, "HMU if interested. If not That's cool."  HMU is an abbreviation for "hit me up."  "Gary," a person later identified by law enforcement officers as George BROOKS (72 years of age), responded via e-mail that he looked forward to talking more.

On September 6, 2015, BROOKS asked the UC, "what do you play?" BROOKS was informed that the father and his notional children "make each other happy" and was told that this lifestyle was "definitely not for everyone." BROOKS responded, "Definitely interested and also like to make others happy as well."  BROOKS said that he was most comfortable with the 10-year-old boy. When asked what he wanted to do with the 10-year-old son, BROOKS said, "What do you do with him so I know what the limits are."  BROOKS expressed concern about the possibility of a "police sting" and asked if the children had "played with other men" in the past.

3

On September 8, 2015, the UC e-mailed BROOKS and stated "If u changed your mind its cool just want to know where this is headed."  BROOKS responded that he wanted to go to the UC's house "and see how things go and hopefully feel comfortable."  BROOKS then provided his phone number and the UC called him as agreed.  During the recorded conversation, BROOKS expressed the desire to engage the 10-year-old boy in oral sex.  *See* Government Trial Exhibit 4 (recorded UC call) and Government Trial Exhibit Exhibit 5 (transcript of the undercover call).  BROOKS talked about the possibility of having the child perform anal sex on BROOKS.  BROOKS also said that his interest in incest stemmed from having heard stories about families and brothers that have kids and go on camping trips and they all play together.  BROOKS said that a while back he responded to a Craigslist ad similar to the one he posted in this case.  BROOKS indicated that the ad was posted by a man who had a 12-year-old son.  BROOKS explored the possibility of a sexual encounter with the 12-year-old boy but the father stopped the communications.

Thereafter, on September 9, 2015, BROOKS e-mailed the UC and relayed that he was uncircumcised but kept his penis clean, and said he would shave the hair off of his scrotum and trim his pubic hairs before coming to visit the UC's notional 10-year-old son.  Later in the day, BROOKS e-mailed the UC to express his concern that "this is a police sting."  The UC gave BROOKS a way out by stating, "Dude u don't have to do a thing."  The UC also said that this was not a

sting.  BROOKS responded, "OK great. I feel better about this.  I will see you at 11 am tomorrow then. Gary"

BROOKS asked the UC, "What did you do with them last night?"  The UC informed BROOKS that he had performed oral sex on his female daughter and "light" anal sex on the boy.  BROOKS responded, "Nice," and then asked the UC whether he (the UC) had ejaculated:  "Did your son get you off?"  The UC indicated that he had ejaculated, to which BROOKS responded, "Nice."

On September 10, 2015, the UC and BROOKS exchanged e-mails confirming the location and time of the meeting.  They also exchanged a physical description of each other.  Shortly after the undercover vehicle parked at the meeting point in Seminole County, BROOKS drove to within approximately 20 feet of the vehicle.  BROOKS then exited his vehicle and exchanged greetings with an undercover officer (FBI SA Scott Spruill) who was acting as a decoy, namely, the father of the 10-year-old boy.  BROOKS was immediately informed that he was under arrest.  At that point, BROOKS exclaimed, "I knew this was going to happen."

SA Hyre testified that he advised BROOKS of his *Miranda* rights, which he waived, agreeing to speak to the interviewing agents.  BROOKS admitted he had engaged in e-mail communications and a phone conversation with a man over the past several days and that the subject of these communications was BROOKS engaging the man's 10-year-old son in oral sex.  BROOKS stated that he woke up, showered and went to the prearranged meeting place for the

5

purpose of meeting the father and engaging the boy in oral sex.  BROOKS also said that he had posted an advertisement on Craigslist entitled, "Family Play Time" and that he had also posted other advertisements on Craigslist regarding incestuous sex.

BROOKS further stated that approximately 4 years ago, while residing in Maryland, he had engaged another father in e-mail conversations regarding having sex with that man's 12-year-old son.  BROOKS said that this event never came to fruition because the father of the boy ended contact with him.

FBI Task Force Officer (TFO) Debra Healy testified as an expert in the field computer and digital media forensics.   TFO Healy testified that she conducted the forensic examination of BROOKS' phone, a red Samsung Galaxy 5S, model SM-G860P.  A forensic analysis of the phone revealed BROOKS' personal information (photographs, e-mail, bank account information, contact information, his alias ("Gary"), etc.), the e-mail communications between BROOKS and SA Hyre, as well as the Craigslist advertisement posted by BROOKS.

John Gopoian (Gopoian) also testified that 44 years ago, when he was about six or seven years old, the defendant (who was his uncle at the time) sexually assaulted him.  Specifically, Gopoian testified that on several occasions he woke up to the defendant performing oral sex on him.   These incidents occurred at the defendant's home.  Gopoian also declared that the defendant

exposed his penis to him when they showered together.  Gopoain recalled that the defendant was uncircumcised.

### III.    Memorandum of Law

### Motion for Acquittal

In considering the defendant's motion for acquittal pursuant to Fed. R. Crim. P. 29, this Court must view the direct and circumstantial evidence in the light most favorable to the United States.  *See United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005); *See also United States v. Taylor*, 972 F.2d 1247, 1250-52 (11th Cir. 1992).  "The district court must accept all reasonable inferences tending to support the Government's case.  Likewise, any conflicts in the evidence are to be resolved in the Government's favor."  *Id.* at 1250 (citations omitted); *See also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.* at 319.  *See also Carvazos v. Smith*, 132 S. Ct. 2, 4 (2011).

### Legal Argument

BROOKS argues that the evidence was insufficient to show that BROOKS intended to persuade, induce or entice a minor to engage in sexual activity and that he took a substantial step upon that specific intent.  To that effect, BROOKS

alleges that it was SA Hyre who introduced the idea of having sex with minors and that BROOKS merely acquiesce to SA Hyre's invitation.  BROOKS alleges that he was entrapped by SA Hyre into engaging in the criminal conduct at issue.

The government submits that the evidence in this case was more than sufficient to convict the defendant of attempt to persuade, induce, or entice a minor to engage in unlawful sexual conduct.  The entrapment defense failed because the jury disbelieved defendant's allegation that he lacked predisposition.  The evidence showed that BROOKS was predisposed to commit the offense because he had sexually molested his nephew (who was about 6 or 7 years of age at the time) and attempted to entice a 12-year-old boy to engage in sexual activity.  The evidence showed that when BROOKS learned that SA Hyre's 10-year-old boy was available for sex, he immediately availed himself of the opportunity, by negotiating with SA Hyre to induce the boy to engage in oral and anal sex, and later by traveling to meet with the boy for said purpose.  In addition, the entrapment defense was defeated because BROOKS was given several opportunities to back out of his illegal plan to persuade, induce, and entice a minor to engage in illicit sexual conduct, but BROOKS failed to do so.

## Legal Parameters are Clear

The jury received clear instructions on the law.  The parties agreed to submit Eleventh Circuit Pattern Jury Instruction 92.2 (as modified), which states:

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

1.     the Defendant knowingly persuaded, induced, or enticed an individual to engage in sexual activity, as charged;

2.     the Defendant used a computer, cell phone, or the Internet to do so;

3.     when the Defendant did these acts, he believed the individual was less than 18 years old; and

4.     if the sexual activity had occurred, the Defendant could have been charged with a criminal offense under Florida Statute subsection 794.011.

It is not necessary for the Government to prove that the individual was in fact less than 18 years of age; but it is necessary for the Government to prove that the Defendant believed such individual to be under that age.  Also, the Government need not prove that a real minor under the age of 18 was involved in the offense; it is sufficient that Defendant believed that an individual under the age of 18 was involved.[1]

The Defendant need not communicate directly with an individual under 18 years of age; it is sufficient if the Defendant induces the individual to engage in unlawful sexual activity by communicating with an adult intermediary for that purpose.[2]

As used in the instruction, "induce" means to stimulate the occurrence of or to cause.

A computer, cell phone, and the Internet are each facilities of interstate commerce.

---

[1] *United States v. Rothenberg*, 610 F.3d 621, 626 (11th Cir. 2010); *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002)("[A]n actual minor is not required for an attempt conviction under 18 U.S.C. § 2422(b).").

[2] *Rothenberg*, 610 F.3d at 626; *United States v. Hornaday*, 392 F.3d 1306, 1310-11 (11th Cir. 2004); *United States v. Murrell*, 368 F.3d 1288, 1287 (11th Cir. 2004).

As a matter of law, the following are crimes under Florida law: sexual battery by a person 18 years of age or older upon a person less than 12 years of age. "Sexual battery" means the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual battery does not include an act done for a bona fide medical purpose.

The jury also received an instruction on "attempt," the modality charged in this case, which states:

The Defendant can be found guilty of an attempt to commit that offense only if both of the following facts are proved beyond a reasonable doubt:

First:   That the Defendant knowingly intended to commit the crime of persuading, inducing, or enticing a minor to engage in sexual activity; and

Two:   That the Defendant's intent was strongly corroborated by his taking a substantial step toward committing the crime.

A 'substantial step' is an important action leading up to committing of an offense-not just an inconsequential act.  It must me more than simply preparing.  It must be an act that would normally result in committing the offense.

## **BROOKS had the required intent**

BROOKS alleges he did not have the required intent to induce, persuade or entice the notional minor into engaging in illicit sexual conduct, as he never attempted to contact the minor directly or indirectly through words or actions. The advertisement soliciting "family play time," the e-mails and audio recorded call between BROOKS and SA Hyre, and Gopoian's testimony indisputably showed the defendant's sexual interest in minor boys and his intent to induce, entice, and persuade a 10-year-old boy to engage in sexual activity with him.

The defendant specifically told SA Hyre he would like to engage in oral sex with the minor and explored the possibility of anal sex.   Furthermore, BROOKS questioned SA Hyre about the way he (SA Hyre) sexually played with his fictitious son and daughter.   BROOKS also informed SA Hyre that he was shaving his genitals and getting ready for the sexual encounter with the boy, and then he traveled with the purpose of engaging the minor in illicit sexual conduct. BROOKS' incriminating statements about his sexual interest in children and his attempt to entice a 12-year-old boy to engage in sexual activity, corroborate that BROOKS had the intent to cause a 10-year-old boy to engage in unlawful sexual conduct and that he took a substantial step toward the commission of the offense by traveling to meet with the minor.

In *United States v. Murrell*, 368 F.3d 1283, 1287-88, the Eleventh Circuit found that the term "induce" is not synonymous to the term "persuade."   The Court defined the term "induce" as "to stimulate the occurrence of; cause."

> The term 'induce' in § 2422 is not ambiguous and has a plain and ordinary meaning.  'Induce' can be defined in two ways.  It can be defined as '[t]o lead or move by influence or persuasion; to prevail upon,' or alternatively, '[t]o stimulate the occurrence of; cause.'  We must construe the word to avoid making § 2422 superfluous.  To that end, we disfavor the former interpretation of "induce," which is essentially synonymous with the word 'persuade.'  By negotiating with the purported father of a minor, Murrell attempted to **stimulate or cause** the minor to engage in sexual activity with him. Consequently, Murrell's conduct fits squarely within the definition of 'induce.' (Emphasis supplied.)

The Court also found that Murrell's agreement with the father, who presumably exercised influence over his 13-year-old girl to engage her in sex for

money, implied procuring the daughter to engage in sexual activity.  The Court thus found that Murrell acted with the intent to induce a minor to engage in unlawful sexual activity.   In the same manner, BROOKS engaged in communications with SA Hyre under the assumption that SA Hyre would exercise influence and authority over his 10-year-old boy.  BROOKS' grooming behavior toward SA Hyre, by stating he was into holding, kissing and making the child happy and comfortable, is clear evidence of intent to procure the 10-year-old boy to engage in sexual activity.   BROOKS sought to make the sexual encounter with the boy a pleasurable experience for both SA Hyre and his son. BROOKS also mentioned that if everything worked out fine, they could do it again, thereby making clear his intent to make the sexual exploitation of the boy (and possibly his sister) a reoccurring event.  *See* Exhibit 4.

In conclusion, BROOKS posted the ad soliciting an incestuous relation which clearly implied he was interested in children, particularly, young boys.  He had engaged his nephew in the same type of sexual contact he was seeking in this case, oral sex.  The ad stated, "I could be your long lost uncle," clearly alluding to BROOKS' sexual molestation of Gopoian.  Thus, the totality of the evidence in this case clearly showed BROOKS had the motive and intent to pursue a sexual encounter with the minor, and he did so through SA Hye, the person he believed would have authority over the minor.  Thus, the evidence sufficiently proved the defendant's intent.

## BROOKS took a substantial step toward the
## commission of the offense

BROOKS also alleged he did not take a substantial step toward the commission of the offense.  In *Murrell, supra*, the Eleventh Circuit stated:  "To find that a substantial step was taken, the court must determine that the defendant's objective acts mark his conduct as criminal such that his acts as a whole strongly corroborate the required culpability."   The Court found that Murrell's objective acts strongly corroborated his culpability and provided clear evidence that his conduct was criminal.

> Murrell (1) made several explicit incriminating statements to Detective Spector; (2) traveled two hours to another county to meet a minor girl for sex in exchange for money; and (3) carried a teddy bear, $300.00 in cash, and a box of condoms when he arrived at the meeting site.  His actions, taken as a whole, demonstrate unequivocally that he intended to influence a young girl into engaging in unlawful sexual activity and that his conduct was therefore criminal.  Thus, Murrell took a substantial step toward inducing a minor to engage in illicit sexual acts, thereby satisfying the second element of criminal attempt.  *Id.* at 1288.

In *United States v. Lanzon*, 639 F.3d 1293, 1299 (11th Cir. 2011), the Court held that a defendant who conducts sexually explicit online conversations regarding a 14-year-old, and arranges to meet with the 14-year-old through an undercover agent, and then drives several miles to the meeting place, carrying condoms and mint lubricant in his truck, engages in conduct constituting a substantial step to violate Section 2422(b).

> A defendant can be convicted under this section when he arranges to have sex with a minor or a supposed minor through

13

communications with an adult intermediary. *Murrell,* 368 F.3d at 1286.  In either circumstance, the government must show that he (1) 'intended to cause assent on the part of the minor,' and (2) 'took a substantial step toward causing assent, not toward causing actual sexual contact.'  *United States v. Lee,* 603 F.3d 904, 914 (11th Cir. 2010).  Lanzon took a substantial step in attempting to violate § 2422(b).  *See Bist v. State,* 35 So. 3d 936, 941-42 (Fla. 5th DCA 2010).  He conducted sexually explicit online conversations regarding a 14-year-old, and arranged to meet 'Tom' and the 14-year-old to engage in sexual activity.  *See id.* at 941.  He drove several miles to the arranged meeting place, approached the undercover officers asking for 'Tom,' and carried condoms and mint lubricant in his truck.  *See id.* at 942.  These actions 'strongly corroborate' Lanzon's culpability and support the jury's verdict.  *See Root,* 296 F.3d at 1228.  Just as Root engaged in conduct that would have constituted a violation of O.C.G.A. §§ 16-6-3 (statutory rape) and 16-6-4 (child molestation) if he had actually completed his crime, *see id.* at 1227 n. 10, Lanzon engaged in conduct that would have constituted a violation of Fla. Sta. §§ 800.04(4)(a) if he had completed his crime.  *Id.*

In this case, BROOKS took substantial steps towards the commission of the offense.  BROOKS posted an advertisement seeking a sexual family dynamic, clearly implying he was soliciting sex with minors.  He then engaged in conversations about the possibility of engaging two minors in sexual activity. BROOKS later narrowed the scope of his sexual interest to the 10-year-old boy and he conveyed his interest in engaging the boy in oral and anal sex.  Lastly, the defendant made arrangements to meet the fictitious minor and traveled to meet with the minor in order to fulfill his illicit purpose.  After his arrest, the defendant readily admitted that he had traveled to engage the minor in oral sex. These acts strongly corroborated defendant's culpability and supported a finding

that BROOKS would have committed sexual battery had he actually completed his crime.

## BROOKS' entrapment defense fails

The defendant alleged he was entrapped by SA Hyre.  In *United v. Jacobson*, 503 U.S. 540 (1992), the Court held that "[w]here the Government has induced an individual to break the law and the defense of entrapment is at issue, … the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents."  *Id.* at 548-49.  To that effect, the United States Supreme Court also noted that when a defendant is simply provided with the opportunity to commit a crime which he readily accepts, "the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition."  *Id.* at 550.  In such a case, it is unlikely that an entrapment defense would warrant a jury instruction.  *Id.*

In *Simmons*, 2014 WL 406750 (11th Cir.), the defendant argued entrapment and outrageous conduct.  The Eleventh Circuit expressed that the entrapment defense requires "(1) government inducement of the crime and (2) the defendant's lack of predisposition to commit the crime before the inducement."  *Id.* at 2.  The Court found that the argument of entrapment failed because defendant did "no more than show 'the Government's mere suggestion of a crime or initiation of contact[, which] is not enough.'"  *Id.*  Simmons had posted on the Internet an adults-only notice regarding his desire to participate in

someone's first sexual experience.  *Id.*  When the undercover persona (Rebecca) responded that she was only 14 years old, Simmons responded that he was not concerned over age.  *Id.*  Simmons expressed his desire to teach Rebecca about sex.

> Thus, while the Government provided the opportunity for Simmons to commit a crime, the evidence nevertheless demonstrated Simmons' own criminal predisposition and Simmons cannot show that this predisposition was the product of anything amounting to 'excessive pressure or manipulation of a non-criminal motive.'  *Id.* (quoting *Jacobson v. United States*, 503 U.S. at 549-50).

In *United States v. Sumner*, 522 Fed. Appx. 806 (11th Cir. 2013), the Eleventh Circuit found that defendant was predisposed to commit the offense of attempting to persuade, induce, or entice a minor to engage in unlawful sexual activity, before making contact with the undercover officers.  *Id.* at 812.  The evidence was sufficient to rebut Sumner's entrapment defense, because defendant promptly responded to two different Craigslist ads posted by the undercover officers concerning sex with minors, engaged in overtly sexual conversations with a fictitious 14-year-old and the apparent mother of another 14-year-old, drove across state lines later that same night for the purpose of engaging in sexual activity with one of the minors, arrived at the meeting with sex paraphernalia, and because he failed to back out of the arranged meeting at any time during his trip.  *Id.*  "'[P]redisposition may be demonstrated simply by a defendant's ready commission of the charged crime' or 'by evidence that the defendant was given opportunities to back out of illegal transactions but failed to

16

do so.'"  *Id.*  "Because the government agents in this case 'simply provided [Sumner] with the opportunity to commit a crime' by posting the Craigslist ads, his 'ready commission of the criminal act amply demonstrated [his] predisposition.'"  *Id.* at 813.

In this case, the evidence showed that it was BROOKS who posted the sexual advertisement in the Casual Encounters section of Craigslist soliciting an incestuous family encounter. The government agent merely provided an opportunity for BROOKS to commit the offense by responding to BROOKS' advertisement posing as the father of two minors that were available for an incestuous relation.  When BROOKS learned about the age of the fictitious minors he did not back out.  Instead, BROOKS conveyed his sexual interest in the minor boy and specified he wanted to engage the minor in oral and (possibly) anal sex.  During the audio recorded call (Exhibit 4), BROOKS also informed SA Hyre about an attempt to entice a 12-year-old boy to engage in sexual activity. After his arrest, BROOKS confirmed that he had previously engaged another father in communications about the possibility of having sex with a 12-year-old boy.  Moreover, Gopoian testified that he was 6 or 7 years of age when BROOKS performed oral sex on him.  Thus, the jury reasonably inferred that BROOKS had a sexual interest in very young boys and, thus, he was predisposed to commit the instant offense.

BROOKS was given several opportunities to withdraw from his plan, but he never did.  Instead, BROOKS reinitiated communications with SA Hyre,

17

procured the encounter with the minor, and traveled to have sex with the minor. Thus, the entrapment defense was without merit.

In light of the above, the government submits the evidence sufficiently proved the defendant's guilt and beyond a reasonable doubt.

For the foregoing reasons, the United States of America prays from the Honorable Court to deny the defendant's motion for judgment of acquittal.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By:   *s/ Ilianys Rivera Miranda*
ILIANYS RIVERA MIRANDA
Assistant United States Attorney
USA No. 150
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:    ilianys.rivera@usdoj.gov

18

**U.S. v. GEORGE ADRIEN BROOKS**              **Case No. 6:15-cr-219-Orl-41TBS**


## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2016, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice

of electronic filing to the following:

Alisha Maria Scott
Assistant Federal Defender

Conrad Kahn
Research and Writing Attorney

Jim T. Skuthan
Assistant Federal Defender


*s/ Ilianys Rivera Miranda*
ILIANYS RIVERA MIRANDA
Assistant United States Attorney
USA No. 150
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:    ilianys.rivera@usdoj.gov
