UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:15-cr-219-Orl-41TBS

GEORGE ADRIEN BROOKS

## UNITED STATES SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, files its sentencing memorandum and requests this Court to impose a sentence of life, which is a sentence within the Sentencing Guidelines ("guidelines") range as set forth in the Presentence Investigation Report (PSR) prepared by the United States Probation Office (USPO).

## I.    Background

On October 1, 2015, a federal Grand Jury sitting in Orlando, Florida, issued an Indictment charging George Adrien BROOKS (BROOKS) with a violation of 18 U.S.C. § 2422(b), namely, the attempt to persuade, induce, or entice a person the defendant believed to be a minor through an adult intermediary, to engage in sexual activity for which the defendant could have been charged with sexual battery under Fla. Stat. § 794.011.

BROOKS was tried on March 2 through 4, 2016.  The United States called four witnesses, and presented evidence that from on or about September 5, 2015, to on or about September 10, 2015, BROOKS engaged in

communications, via the Internet and a cell phone, with Federal Bureau of Investigations (FBI) Special Agent (SA) Rodney Hyre, who was posing as the father of two minors (a 10-year-old boy and a 13-year-old girl) involved in an incestuous relationship.  During the online communications, the defendant told SA Hyre that he wanted to perform sexual acts on his minor boy, such as oral and (possibly) anal sex.

The evidence showed that on September 10, 2015, BROOKS traveled from his residence to Gander Mountain, in Seminole County, Florida, where he intended to meet the 10-year-old boy for the purpose of inducing him into sex acts the defendant had previously discussed with SA Hyre via e-mail and a recorded telephone conversation.

SA Hyre testified that, post-*Miranda*, BROOKS admitted he fantasized about sex with children, which caused him to travel to the location in Gander Mountain with the intent to induce the minor to perform oral sex, and that he had been in communication with the father of the boy over the course of several days for the purpose of soliciting oral sex from the minor, conduct for which he could be charged with sexual battery in the state of Florida.  BROOKS also admitted that about four years ago he had engaged in similar conversations over the Internet with the father of a 12-year-old boy, with the purpose of engaging the minor boy in sexual activity.

Trial evidence also showed that about 44 years ago, BROOKS sexually molested his then nephew, John Gopoian (Gopoian), who was about 7 years of age at the time.

BROOKS was 72 years of age when he committed the acts charged in this case.  BROOKS' offense conduct demonstrates that he has been attracted to prepubescent children for decades.  Thus, it could be reasonably inferred from the evidence that BROOKS is a pedophile.  The evidence further demonstrates that BROOKS, still to this date, is willing and able to commit sex crimes against children.  BROOKS' lack of insight and remorse for his criminal conduct against the most vulnerable members of our society requires a serious sentence.  A sentence that should be aimed at protecting our community from future crimes of this defendant and provide just punishment for the crimes BROOKS committed against our children.  For said reason, a sentence of life is reasonable and not greater than necessary to accomplish the objectives of 18 U.S.C. § 3553(a).

**II.** **Statement of the Evidence**

SA Hyre testified that on September 5, 2015, while he was working in an undercover capacity, he detected an advertisement in the casual encounters section of Craigslist with the caption, "Family Play Time-m4m (Orlando)."  The body of the advertisement stated, "I know there are families out there (fathers/sons/uncles/nephews/cousins) that play together. I would like to be part of your family and enjoy the closeness you enjoy as a family…"  *See* Government Trial Exhibit 1 (Craigslist advertisement).  SA Hyre ((hereinafter

3

referred to as "UC"), responded via e-mail and indicated that he was the father of a 10-year-old boy and a 13-year-old girl.  *See* Government Trial Exhibit 3 (e-mail communications between the UC and BROOKS).  The UC expressed that he and his children were very close and enjoyed meeting new friends.  The UC further stated, "HMU if interested. If not That's cool."  HMU is an abbreviation for "hit me up."  "Gary," a person later identified by law enforcement officers as George BROOKS, responded via e-mail that he looked forward to talking more.

On September 6, 2015, BROOKS asked the UC, "what do you play?"  BROOKS was informed that the father and his notional children "make each other happy" and was told that this lifestyle was "definitely not for everyone."  BROOKS responded, "Definitely interested and also like to make others happy as well."  BROOKS said that he was most comfortable with the 10-year-old boy.  When asked what he wanted to do with the 10-year-old son, BROOKS said, "What do you do with him so I know what the limits are."  BROOKS expressed concern about the possibility of a "police sting" and asked if the children had "played with other men" in the past.

On September 8, 2015, the UC e-mailed BROOKS and stated "If u changed your mind its cool just want to know where this is headed."  BROOKS responded that he wanted to go to the UC's house "and see how things go and hopefully feel comfortable."  BROOKS then provided his phone number and the UC called him as agreed.  During the recorded conversation, BROOKS expressed the desire to engage the 10-year-old boy in oral sex.  *See*

4

Government Trial Exhibit 4 (recorded UC call) and Government Trial Exhibit 5 (transcript of the undercover call).   BROOKS talked about the possibility of having the child perform anal sex on BROOKS.   BROOKS also said that his interest in incest stemmed from having heard stories about families and brothers that have kids and go on camping trips and they all play together.   BROOKS said that a while back he responded to a Craigslist ad similar to the one he posted in this case.   BROOKS indicated that the ad was posted by a man who had a 12-year-old son.   BROOKS explored the possibility of a sexual encounter with the 12-year-old boy but the father stopped the communications.

Thereafter, on September 9, 2015, BROOKS e-mailed the UC and relayed that he was uncircumcised but kept his penis clean, and said he would shave the hair off of his scrotum and trim his pubic hairs before coming to visit the UC's notional 10-year-old son.   Later in the day, BROOKS e-mailed the UC to express his concern that "this is a police sting."   The UC gave BROOKS a way out by stating, "Dude u don't have to do a thing."   The UC also said that this was not a sting.   BROOKS responded, "OK great. I feel better about this.   I will see you at 11 am tomorrow then. Gary"

BROOKS asked the UC, "What did you do with them last night?"   The UC informed BROOKS that he had performed oral sex on his female daughter and "light" anal sex on the boy.   BROOKS responded, "Nice," and then asked the UC whether he (the UC) had ejaculated:   "Did your son get you off?"   The UC indicated that he had ejaculated, to which BROOKS responded, "Nice."

On September 10, 2015, the UC and BROOKS exchanged e-mails confirming the location and time of the meeting. They also exchanged a physical description of each other. Shortly after the undercover vehicle parked at the meeting point in Seminole County, BROOKS drove to within approximately 20 feet of the vehicle. BROOKS then exited his vehicle and exchanged greetings with an undercover officer (FBI SA Scott Spruill) who was acting as a decoy, namely, the father of the 10-year-old boy. BROOKS was immediately informed that he was under arrest. At that point, BROOKS exclaimed, "I knew this was going to happen."

SA Hyre testified that he advised BROOKS of his *Miranda* rights, which he waived, agreeing to speak to the interviewing agents. BROOKS admitted he had engaged in e-mail communications and a phone conversation with a man over the past several days and that the subject of these communications was BROOKS engaging the man's 10-year-old son in oral sex. BROOKS stated that he woke up, showered, and went to the prearranged meeting place for the purpose of meeting the father and engaging the boy in oral sex. BROOKS also said that he had posted an advertisement on Craigslist entitled, "Family Play Time" and that he had also posted other advertisements on Craigslist regarding incestuous sex.

BROOKS further stated that approximately four years ago, while residing in Maryland, he had engaged another father in e-mail conversations regarding

having sex with that man's 12-year-old son.  BROOKS said that this event never came to fruition because the father of the boy ended contact with him.

FBI Task Force Officer (TFO) Debra Healy testified as an expert in the field of computer and digital media forensics.  TFO Healy testified that she conducted the forensic examination of BROOKS' phone, a red Samsung Galaxy 5S, model SM-G860P.  A forensic analysis of the cell phone revealed BROOKS' personal information (photographs, e-mail, bank account information, contact information, his alias ("Gary"), etc.), the e-mail communications between BROOKS and SA Hyre, as well as the Craigslist advertisement posted by BROOKS.

Gopoian also testified that 44 years ago, when he was about six or seven years old, the defendant (who was his uncle at the time) sexually assaulted him. Specifically, Gopoian testified that on several occasions he woke up to the defendant performing oral sex on him.  These incidents occurred at the defendant's home.  Gopoian also declared that the defendant exposed his penis to him when they showered together.  Gopoian recalled that the defendant was uncircumcised.

## OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

1.  Offense Conduct

BROOKS objects to the narrative describing his offense conduct. However, said narrative is supported by testimonial evidence presented at trial and the jury's guilty verdict.  Thus, BROOKS' objection is unfounded.

2.     Use of Computer under USSG §2G1.3(b)(3)(A) and (B)

BROOKS also argues that the USPO erred in applying the two-level enhancement based on the use of a computer to persuade, induce, or entice a minor to engage in prohibited sexual conduct.  BROOKS is incorrect.

Subsection 2G1.3(b)(3) directs a district court to enhance a defendant's offense level by two if his offense "involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor[.]   The evident purpose of that enhancement is to address that computers facilitate sex crimes against minors by either allowing defendants covert access to minors (subsection (A)) or by allowing defendants to find persons interested in engaging in sex crimes with minors (subsection (B)).

In this case, Probation did not err in applying that enhancement because subsection (A) applies.   BROOKS engaged in text, e-mail and telephonic communications with the UC to persuade, induce, and entice a minor to engage in sexual activity with BROOKS.  BROOKS' cell phone was the means by which he communicated with the UC in order to arrange the sexual encounter with the notional minor.

The Court of Appeals for the Eleventh Circuit has recognized that the use of a cell phone to place calls, send text messages, and access the Internet in

furtherance of the commission of the offense constitutes the use of a computer. *See United States v. Mathis*, 767 F.3d 1264, 1283 (11th Cir. 2014) (A computer is a cell phone within the meaning of 18 U.S.C. § 1030(e)(1)).[1]  Thus, the enhancement was properly applied.

### 3.   Pattern of Prohibited Sexual Conduct, USSG §4B1.5(b)(1)

BROOKS objects to the five-level enhancement for engaging in a pattern of prohibited sexual conduct.  The USPO applied a five-level enhancement to defendant's base offense level because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct.

The instant offense of conviction is a covered sex crime because it involved the online enticement of a minor to engage in illicit sexual conduct and it falls under Chapter 117 of the United States Code.  *See* USSG §4B1.5 cmt. (n. 2).  Furthermore, the defendant engaged in a pattern of prohibited sexual conduct because "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor."  *See* USSG §4B1.5 cmt. (n. 4(B)(i)). The enhancement applies without regard to whether the "occasion" occurred "during the course of the instant offense" or "resulted in a conviction for the conduct that occurred on that occasion."  *See* USSG §4B1.5 cmt. (n. 4(B)(ii)).

---

[1] Under USSG  §2G1.3(b)(3)(B), comment. (n.1), "'[c]omputer' has the meaning given that term in 18 U.S.C. § 1030(e)(1)."

For this purpose, the government is primarily relying on BROOKS' attempt to entice a 12-year-old boy, through his father via the Internet, about four years ago. *See* Government Trial Exhibit 4 (recorded UC call) and Government Trial Exhibit 5 (transcript of the undercover call). Post *Miranda* the defendant admitted that he sought to engage the 12-year-old child in sex but the minor's father stopped the communications. *See* Trial Transcript of March 2, 2016, Volume II, Page 99. Said attempt constitutes a violation of 18 U.S.C. § 2422(b), a Chapter 117 offense, which is prohibited sexual conduct under USSG §4B1.5 cmt. (n. 4(A)) and 18 U.S.C. § 2426(b)(1)(A). Thus, the instant offense and the previously described incident involving the attempt to entice a 12-year-old boy show a pattern of activity involving prohibited sexual conduct which justifies the sentencing enhancement. *See* USSG §4B1.5 cmt. (n. 4(A)(ii). *See also United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010); *United States v. Castleberry*, 594 Fed. Appx. 612, 613 (11th Cir. 2015) ("If the offense of conviction qualifies as 'prohibited sexual conduct,' the pattern-of-activity enhancement is available if the district court finds only *one* additional occasion of prohibited sexual conduct." Furthermore, "a defendant's conduct need not result in a conviction in order for a district court to consider occasions of prohibited sexual conduct."); *United States v. Worsham*, 479 Fed. Appx. 200 (11th Cir. 2012); *United States v. Osorio*, 481 Fed. Appx. 548 (11th Cir. 2012); *United States v. Carter, II*, 292 Fed. Appx. 16, 20 (11th Cir. 2008) ("Section

4B1.5 … looks at the likelihood that the defendant will become a repeat offender and whether lengthy incarceration therefore is needed to protect the public").

In light of the foregoing, the enhancement for pattern of prohibited sexual conduct was properly applied.

## 18 U.S.C. § 3553 FACTORS

The Supreme Court has stated a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See United States v. Gall*, 128 S. Ct. 586 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). Then, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *See Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

In this case, the defendant is exposed to a statutory minimum of 10 years, up to life in prison. The defendant is a criminal history category I, with a total

offense level 43, and an advisory guidelines range of life.  A sentence within that range will reflect the seriousness of the defendant's conduct and the seriousness with which Congress and the Sentencing Commission view the sexual exploitation of minors.  Additionally, a sentence within that range is necessary to account for many of the factors that the Court must consider under 18 U.S.C. § 3553(a).

<u>The Nature and Circumstances of the Offense</u>

The nature, circumstances, and extent of BROOKS' criminal conduct is egregious and militates in favor of a sentence of life.  *See* 18 U.S.C. § 3553(a)(1).  The defendant is a 72-year-old male who, in order to gratify his own deviant sexual fantasy involving incestuous sex, coordinated with the father of a 10-year-old boy to engage the minor in sexual activity.  The evidence showed that the defendant explored the possibility of receiving oral and anal sex from the minor.  BROOKS also informed the father that he was interested in having both the boy and his minor sister together as he performed these sexual acts.

The serious nature of the defendant's conduct cannot be overstated. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses."  *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009).  The Eleventh Circuit has recognized that sex crimes against children cause "substantial and long-lasting harm…"  *United States v. Mozie*, 752 F.3d 1271, 1289 (11th Cir. 2014).  Sexually abused children are "'…unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have

Case 6:15-cr-00219-CEM-TBS   Document 113   Filed 06/16/16   Page 13 of 18 PageID 1573

a tendency to become sexual abusers as adults.' Simply stated, 'sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate.'" *Id.* Thus, the irreparable harm the defendant would have caused a child should be considered in determining an appropriate sentence for his offense.

<u>The History and Characteristics of the Defendant</u>

Similarly, BROOKS's history and characteristics weigh in favor of a sentence within the guidelines range. 18 U.S.C. § 3553(a)(1). This factor is aimed at distinguishing among defendants who commit a particular offense or type of offense. *Irey*, 612 F.3d at 1203.

Here, BROOKS' history and characteristics do not distinguish him from other defendants who commit child sex crimes under similar circumstances. The PSR indicates that BROOKS' daughter recalled her father throwing her mother (Mrs. Brooks) against the wall on at least two occasions when her parents were approaching separation. During the trial, Gopoian testified that BROOKS defrauded his maternal grandmother's estate and fled to Florida.

The evidence demonstrated that BROOKS has been sexually interested in children for decades. When BROOKS was about 28 years of age, he sexually abused his 6 to 7-year-old nephew by performing oral sex on him. The defendant used his position of trust with his wife and the victim's mother in order to have access to the child while she slept. The egregious nature of the

13

defendant's conduct simply shocks the conscience. His actions had a lifelong impact on Gopoian (*See* Exhibit A), who was victimized when he was most vulnerable – while he was sleeping at his aunt's home. By testifying, Gopoian sought "to put final closure to a case that never saw justice, prosecution or held anyone accountable." BROOKS was never brought to justice for his actions because the family was too embarrassed.

In addition to sexually molesting Gopoian, the FBI investigation revealed that BROOKS had attempted to engage a 12-year-old boy in sexual activity about four years ago while residing in Maryland. The acts did not come to fruition because the father of the minor stopped communicating with BROOKS.

Based on the evidence before the Court, it can be reasonably inferred that BROOKS is a pedophile.[2] Furthermore, BROOKS' background shows that he is a hands-on child sexual predator who lacks the insight to refrain from acting out on his dangerous sexual interests. At 72 years of age, BROOKS is still pursuing sexual encounters with prepubescent children. This makes him a danger to the children in our community. Thus, BROOKS' pattern of committing sex crimes against children constitutes an aggravating factor which should lead the court to impose a serious sentence against BROOKS.

---

[2] Pursuant to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, a pedophile is an individual who fantasizes about, is sexually aroused by, or experiences sexual urges toward prepubescent children for a period of at least six months. DSM IV at 566-67. *See also, United States v. Irey*, 612 F.3d 1160, 1200, n.27 (11th Cir. 2010) ("Under the DSM IV TR, pedophilia is a paraphilia and an axis I disorder.")

A sentence within the guidelines should provide sufficient time for BROOKS to receive sexual offender treatment and reflect upon the seriousness of his offense.

In light of the above, BROOKS' history and characteristics do not warrant a downward variance.  *See, United States v. Martin*, 455 F.3d 1227, 1239-40 (11th Cir. 2006) (disapproving the sentencing court's emphasis on the defendant's lack of a criminal record and the aberrational nature of his crimes, which the guidelines had already taken into account, and pointing out that his criminal conduct spanned a period of years and caused much harm).

Just Punishment, Adequate Deterrence,
Respect for the Law, and Protection of the Public

This factor is known as the "*just desserts*" concept, answering the need for retribution and to make the punishment fit the crime, and the need for the defendant to be punished justly.  *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010).  The Irey court cited the Senate Report regarding this provision:

> This purpose – essentially the "just desserts" concept – should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.

(quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

"Because the punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the

sentence should be." *United States v. Mozie*, 752 F.3d 1271, 1289 (*citing Irey*, 612 F.3d at 1206.)   Considering that child sex crimes are among the most egregious offenses, the Eleventh Circuit has "repeatedly upheld 'severe sentences in these cases.'" *Mozie*, 752 F.3d at 1271 (*citing Pugh*, 515 F.3d at 1202).

BROOKS' sexual exploitation of children and his dangerous sexual interests show that he poses a risk to children in the future.  "Congress explicitly [has] recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."  *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006); *see also, United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("As Congress has found and as we have discussed, child sex offenders have appalling rates of recidivism and their crimes are under-reported.").

The nature of the evidence in this case indicates that BROOKS is a pedophile who lacks the moral conscience to refrain from acting on his sexual desires.  BROOKS' lack of regard for the welfare of children, his past criminal conduct against children, and his criminal intent to sexually exploit children in this case show that he is a danger to society.  Thus, BROOKS' sexual exploitation of children requires a serious sentence.   A sentence within the guidelines will assure BROOKS' permanent separation from children.  It will give BROOKS an opportunity for reflection and treatment in a structured setting, separated from children.

For the foregoing reasons, the United States respectfully requests the Court to sentence BROOKS to a sentence within the guidelines range.  In light of the serious nature of the offense, BROOKS' personal characteristics, the need for the protection of children, just punishment, deterrence, and the need to promote respect for the law, a sentence within the guidelines range is reasonable.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By:  *s/ Ilianys Rivera Miranda*
ILIANYS RIVERA MIRANDA
Assistant United States Attorney
USA No. 150
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:       ilianys.rivera@usdoj.gov

17

**U.S. v. GEORGE ADRIEN BROOKS**          **Case No. 6:15-cr-219-Orl-41TBS**


## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2016, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice

of electronic filing to the following:

Alisha Maria Scott
Assistant Federal Defender

Conrad Kahn
Research and Writing Attorney

James T. Skuthan
Assistant Federal Defender


*s/ Ilianys Rivera Miranda*
ILIANYS RIVERA MIRANDA
Assistant United States Attorney
USA No. 150
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:  (407) 648-7643
E-mail:      ilianys.rivera@usdoj.gov

18